UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendant.

In re APPLICATION VI OF THE ELECTION OFFICER.

No. 88 Civ. 4486 (DNE).

United States District Court,
S.D. New York.

Oct. 29, 1996.

## MEMORANDUM & ORDER

EDELSTEIN, District Judge:

This opinion emanates from the voluntary settlement of an action commenced by plaintiff United States of America against, *inter alia,* defendants International Brotherhood of Teamsters ("IBT") and the IBT's General Executive Board embodied in the voluntary consent order entered March 14, 1989 ("Consent Decree"). The goal of the Consent Decree is to rid the IBT of the hideous influence of organized crime through a two-phased implementation of the Consent Decree's various remedial provisions. In the first phase of the Consent Decree, these provisions provided for three court-appointed officers: the Independent Administrator to oversee the Consent Decree's provisions, the Investigations Officer to bring charges against corrupt IBT members, and the Election Officer to supervise the electoral process that led up to and included the 1991 election for International Union Office. In the second phase of the Consent Decree, the Independent Administrator was replaced by a three-member Independent Review Board ("the IRB"), but the position of Election Officer remained unchanged.

Currently before the Court is *Application VI of the Election Officer for an Order Approving Supplemental Rules for the 1996 International Officer Mail Ballot Election* ("Application VI"). This Court grants the Election Officer's application because this Court finds that the proposed rules: (1) are a proper exercise of the Election Officer's vested powers; and (2) fall within the Election Officer's broad authority to supervise the IBT election process.

### BACKGROUND

Under the Consent Decree, the Election Officer was responsible for supervising the rank-and-file elections of delegates to the 1991 IBT Convention as well as the subsequent rank-and file elections of IBT officers from among the candidates nominated at the 1991 IBT Convention. *United States v. International Bhd. of Teamsters [1996 Election Rules Opinion],* 896 F.Supp. 1349, 1353 (S.D.N.Y.1995), *aff'd as modified,* 86 F.3d 275 (2d Cir.1996); *United States v. Interna-*

*tional Bhd. of Teamsters [1991 Election Rules Opinion],* 931 F.2d 177, 181 (2d Cir. 1991); Consent Decree, ¶ 12(D)(ix). Pursuant to the authority vested in the Election Officer to supervise all phases of the 1991 IBT Election by paragraph 12(D)(ix) of the Consent Decree, the Election Officer promulgated a set of rules governing the general conduct of the 1991 IBT Election, *United States v. International Bhd. of Teamsters [1991 Election Rules Opinion],* 742 F.Supp. 94, 97 (S.D.N.Y.1990), *aff'd as modified,* 931 F.2d 177 (2d Cir.1991), as well as supplemental rules regarding ballot counting and other procedural details pertinent to the election process. Order, *United States v. International Bhd. of Teamsters,* 88 Civ. 4486 (S.D.N.Y. Sept. 11, 1991) ("September 1991 Order"); (Declaration of Barbara Zack Quindel, Election Officer of the International Brotherhood of Teamsters ("Quindel Decl.") Ex. 6 (Sept. 5, 1996) (Ballot Counting Rules for the 1991 IBT International Union Officer Election).) This Court reviewed and approved each set of rules proposed by the Election Officer. *E.g., 1991 Election Rules Opinion,* 742 F.Supp. at 107–108; September 1991 Order.

According to the original terms of the Consent Decree, the Election Officer was authorized to oversee only those matters and disputes concerning the 1991 IBT Election. Consent Decree, ¶¶ 3(1), 12(D)(ix). By Stipulation and Order dated February 7, 1995, however, the Consent Decree was amended to reflect the parties' agreement regarding the supervision of the 1995–1996 IBT International Union Delegate and Officer Election ("the 1996 IBT Election"). *See* Stipulation & Order Implementing Paragraph 12(D)(ix) of the March 19 [sic], 1989 Consent Decree (S.D.N.Y. Feb. 7, 1995) ("the February 1995 Order"). The February 1995 Order states that "it is the intention of the Government and the IBT that the Election Officer function in 1996 as similarly as possible to the 1991 Election Officer." *Id.* at 2. The February 1995 Order confers upon the 1996 Election Officer ("the Election Officer") "all rights and duties conferred upon the 1991 Election Officer by paragraph 12 of the Consent Decree," *id.* ¶ 1, including "the authority

granted by Paragraph 12(I) of the Consent Decree to make applications to the Court, after giving notice to specified parties." *Id.* ¶ 3(c).

Pursuant to her authority under the Consent Decree and the February 1995 Order, the Election Officer submitted for this Court's approval the Rules for the 1995–1996 IBT International Union Delegate and Officer Election ("the 1996 Election Rules"). On August 22, 1995, this Court approved the 1996 Election Rules in their entirety. *United States v. International Bhd. of Teamsters [1996 Election Rules Opinion]*, 896 F.Supp. 1349 (S.D.N.Y.1995). On appeal, the Second Circuit affirmed this Court, but held that one provision of the 1996 Election Rules was overly broad, and remanded the 1996 Election Rules to this Court to amend the provision in question. 86 F.3d 271 (2d Cir.1996). This Court modified the rule in accordance with the Second Circuit's opinion. *United States v. International Bhd. of Teamsters [1996 Election Rules Amendment]*, 928 F.Supp. 392 (S.D.N.Y.1996).

Subsequent to her submission of the 1996 Election Rules, the Election Officer submitted other supplementary election rules for this Court's review and approval. *United States v. International Bhd. of Teamsters [Application IV of the Election Officer]*, 88 Civ. 4486, 1996 WL 377145 (S.D.N.Y. July 1, 1996) (approving the *News Media Access Rules for the 1996 IBT International Union Convention* ); *United States v. International Bhd. of Teamsters [Application III of the Election Officer]*, (S.D.N.Y. May 23, 1996) (approving the *Supplementary Election Officer Rules for the 1996 IBT Convention Floor Nominations and Nomination Voting* ).

In the instant application, the Election Officer submits for this Court's review the proposed *Supplemental Rules for the 1996 IBT International Officer Mail Ballot Election* ("the Count Rules"). The Election Officer states that the Count Rules are "designed to insure the accuracy and integrity of the count" of ballots cast by IBT members for the election of IBT officers by addressing certain issues not specified in the 1996 IBT Election Rules. (Quindel Decl., ¶¶ 13–14); (Memorandum of Law in Support of Election

Officer Application VI for an Order Approving Supplemental Rules for the 1996 IBT International Officer Mail Ballot Election, *United States v. International Bhd. of Teamsters*, 88 Civ. 4486 ("E.O.Memo"), at 4–5 (Sept. 5, 1996).) These issues include the following:

—setting a timetable and schedule for the mailing and counting of ballots, and other election-related events;

—announcing the location of the count site and general procedures to be followed for picking up ballots from the postal service;

—establishing procedures to be followed for verifying and updating addresses of IBT members;

—setting forth additional information for candidate observers;

—providing procedures to be followed in the sorting and counting of ballots;

—establishing measures designed to protect the accuracy and integrity of the electronic or mechanical count;

—setting procedures for challenges to ballots;

—establishing the criteria and terms under which a recount may take place; and

—providing for access to the Count site by the media.

(Quindel Decl., ¶ 13); (E.O., Memo at 5.)

The Election Officer explains that, prior to promulgating the Count Rules, she and her representatives held extensive discussions with officials at the Federal Election Commission, the Election Center—a non-profit educational and research organization dedicated to the electoral process, and various vendors of electronic and mechanical counting devices. (Quindel Decl., ¶ 7); (E.O., Memo at 3.) In addition, the Election Officer solicited comments and suggestions from various candidates for IBT International Office. (Quindel Decl., ¶ 8); (E.O.App. at 3.) The Election Officer further submits that she reviewed the background of the 1991 IBT International officer mail ballot election and the rules regarding this election. (Quindel Decl., ¶¶ 7, 10, 12); (E.O.App. at 4.) She concludes that "[e]xcept for additional provisions designed to insure the accuracy and integrity of the count, the Count Rules are

similar to the rules that governed the 1991 International officer count." (Quindel Decl., ¶ 14); (E.O.App. at 5.)

Following the submission of the Count Rules to this Court, the Election Officer served copies of the Count Rules on the United States Attorney for the Southern District of New York ("the Government"), the IBT, all IBT subordinate bodies, all members of the IBT General Executive Board, and all nominated candidates for International office, together with notice of the Election Officer's application to this Court. (Quindel Decl., ¶ 2); (E.O.Memo at 9.) In response to this service and notification, this Court received responses to Application VI from the Government, the IBT, and from James P. Hoffa ("Hoffa"), candidate for the office of IBT General President.

In a memoranda submitted to this Court, Hoffa objects to certain provisions of the proposed Count Rules submitted by the Election Officer. He explains that although he appreciates the consideration given by the Election Officer to concerns regarding the ballot count of the 1996 IBT Election, he believes "logic and accuracy tests should be conducted before and after the count of each local union," and that "the Election Officer should conduct a hand count of a random sample of local unions each day during the count of the ballots to verify the electronic count." (Memorandum on Behalf of James P. Hoffa, *United States v. International Bhd. of Teamsters*, 88 Civ. 4486, at 1 (Sept. 23, 1997).) According to Hoffa, the logic and accuracy tests would "not only provide a repeated and continuous check on the accuracy of the count but also would reduce the number of ballots that would need to be recounted if any particular test revealed a discrepancy between the hand-count of the test ballots and the electronic count." *Id.* at 2–3. Hoffa further asserts that "a hand-count of a statistically significant number of local unions should be conducted ... [to] fully guarantee the accuracy of the electronic count," and that such a count would impose neither an unreasonable burden nor unreasonable expense on the Election officer. *Id.* at 3. In his memorandum, Hoffa neither disputes the Election Officer's authority to

promulgate the Count Rules in general, nor her discretion to impose those rules which she deems necessary to ensure that the 1996 IBT Election is free, fair, and informed.

In its response to Application VI, the Government states that it "supports the Count Rules in their entirety." (Government's Response to Election Officer Application No. VI (For an Order Approving Supplemental Rules for the 1996 IBT International Officer Mail Ballot Election), *United States v. International Bhd. of Teamsters*, 88 Civ. 4486 ("Govt.'s Memo"), at 2 (Sept. 23, 1996).) The Government asserts that the Count Rules are both authorized by the 1996 Election Rules, and within the Election Officer's "substantial discretion to impose election rules that insure that the upcoming elections are free, fair, and informed." *Id.* at 1–2. It endorses the specific procedures adopted by the Election Officer on grounds that they "will ensure a fair and accurate vote." *Id.* at 2. The Government further asserts that it is "squarely within the Election Officer's discretion" to reject the measures recommended by Hoffa for inclusion in the Count Rules, and notes that suggestions similar to those offered by Hoffa already were rejected by both this Court and the Second Circuit in reviewing the 1996 Election Rules. *Id.* at 4–6. Finally, the Government concurs with the Election Officer's assertion that "the Count Rules are similar to the ballot counting rules that governed the 1991 election." *Id.* at 2.

The IBT responded to Application VI through its local counsel Cohen, Weiss and Simon. (Letter from Dominique T. Bravo, Esq., to the Honorable David N. Edelstein, United States District Judge for the Southern District of New York (Sept. 24, 1996).) According to local counsel, following review "the IBT concludes that the[ ] [Count Rules] are consistent with the Rules for the 1995–96 IBT International Union Delegate and Officer Election and as such should be approved by this Court." *Id.*

Subsequent to this Court's receipt of Hoffa's, the Government's, and the IBT's respective responses to the Count Rules, this Court received a supplemental submission from the Election Officer regarding the Count Rules. (Reply Memorandum in Support of Election

Officer Application VI for an Order Approving Supplemental Rules for the 1996 IBT International Officer Mail Ballot Election, *United States v. International Bhd. of Teamsters*, 88 Civ. 4486 ("E.O. Reply Memo") (Oct. 1, 1996).) In this submission, the Election Officer responds to Hoffa's proposed modifications of the Count Rules, and "urges this Court to overrule the objections and approve the Count Rules as originally submitted." *Id.* at 1–2.

The Election Officer explains that she "has substantial discretion to determine how best to conduct and supervise the 1996 IBT International Officer elections." She states that "[i]n his objections, Mr. Hoffa does not assert that the Election Officer has exceeded her authority in promulgating the Count Rules or that the Count Rules conflict with the Consent Decree," but instead has merely "submitt[ed] different procedures for the conduct of the ballot count." *Id.* The Election Officer asserts that she issued the Count Rules "after careful study," that the Count Rules "are the product of her judgment as to the best way to conduct the ballot count," and that the Election Officer carefully considered suggestions regarding other methods of counting the election ballots and "decided not to adopt them based on her considered judgment." *Id.* She also points out that "[w]hen similar objections were posed to the 1996 Election Rules, the Second Circuit stated that absent a colorable argument that the Election Officer acted unreasonably or beyond her authority, the objections were 'quibbles' which should be dismissed." *Id.* at 2–3. Finally, the Election Officer explains that Hoffa's suggested alterations to the Count Rules "will potentially reduce the accuracy and integrity of the final count, and create more opportunity for confusion and mistakes in the count process." *Id.* at 3–8. The Election Officer thus requests that this Court reject Hoffa's recommendations and approve the Count Rules in their entirety. *Id.* at 2, 8.

## DISCUSSION

Consent Decree case law regarding the issue underlying the instant application is clear, and undisputed by the parties. Pursuant to both the Consent Decree and the February 1995 Order, the Election Officer is vested with broad authority to supervise each and every facet of the 1996 IBT election. *1996 Election Rules Opinion*, 896 F.Supp. at 1353; *1991 Election Rules Opinion*, 931 F.2d at 181; Consent Decree, ¶ 12(D)(ix). As the Second Circuit has noted, this "broad authority to 'supervise' the IBT election process," includes "substantial discretion to impose election rules and procedures that ensure that the upcoming elections are free, fair and informed." *1991 Election Rules Opinion*, 931 F.2d at 187.

■ Having reviewed the proposed Count Rules submitted by the Election Officer, this Court finds that they both are a proper exercise of the Election Officer's powers under the Consent Decree, and fall within the Election Officer's broad authority to supervise the IBT election process. As previously stated, the Consent Decree and the February 1995 Order confer upon the Election Officer the authority to make applications to this Court. (February 1995 Order, ¶ 3(c).) Pursuant to this authority, the Election Officer previously has applied to this Court for orders approving of both the primary and supplemental rules for the 1991 IBT Election, *e.g.*, *1991 Election Rules Opinion*, 742 F.Supp. at 97; September 1991 Order; (Quindel Decl., Ex. 6), as well as for orders approving the 1996 Election Rules and other supplementary election rules. *E.g.*, *Application IV of the Election Officer*, 1996 WL 377145 (approving the *News Media Access Rules for the 1996 IBT International Union Convention*); *Application III of the Election Officer*, (S.D.N.Y. May 23, 1996) (approving the *Supplementary Election Officer Rules for the 1996 IBT Convention Floor Nominations and Nomination Voting*). The instant application similarly seeks this Court's approval of supplementary rules pertaining to a crucial stage of the 1996 IBT Election—the counting of ballots. Accordingly, this Court finds that the Election Officer's promulgation of the Count Rules and her application to this Court for an order approving them are a proper exercise of the power vested in the Election Officer by the Consent Decree and the February 1995 Order.

In addition, the Count Rules fall within the Election Officer's broad authority to supervise the IBT election process. This Court's review of the information contained in Election Officer Application VI demonstrate that the Election Officer has labored diligently to devise counting procedures and practices that will protect the integrity of the ballot count of the 1996 IBT Election—she has consulted the FEC, contacted think-tanks, and studied past IBT-electoral practices in her quest to insure the accuracy and integrity of the upcoming ballot count. This Court further finds that the Count Rules themselves translate the Election Officer's concerns regarding the accuracy and integrity of the ballot-counting process into concrete procedures designed to ensure the accuracy and integrity of the ballot-counting process. Accordingly, this Court finds that the Count Rules fall squarely within the Election Officer's "substantial discretion to impose election rules and procedures that ensure that the upcoming elections are free, fair and informed." *1991 Election Rules Opinion*, 931 F.2d at 187.

This Court finds that Hoffa's proposed changes to the Count Rules do not require a different result. As the Election Officer correctly argues, Hoffa does not assert that the Election Officer has exceeded her authority in promulgating the Count Rules or that the Count Rules conflict with the Consent Decree. Instead, Hoffa merely has suggested that the Election Officer follow different procedures for the conduct of the ballot count. As the Second Circuit has cautioned, absent a colorable argument that the Election Officer acted unreasonably or beyond her authority, objections to election rules promulgated pursuant to her authority under the Consent Decree should be dismissed. *United States v. International Bhd. of Teamsters [1996 Election Rules Opinion]*, 86 F.3d 271, 271 (2d Cir.1996). Because Hoffa has raised no argument—colorable or otherwise—that the Election Officer acted either unreasonably or beyond the scope of her authority, this Court finds that his request to modify the Count Rules should be denied.

*CONCLUSION*

IT IS HEREBY ORDERED THAT Election Officer Application VI for an Order Approving Supplemental Rules for the 1996 IBT International Officer Mail Ballot Election is GRANTED.

IT IS FURTHER ORDERED THAT the request of James P. Hoffa to modify the Supplemental Rules for the 1996 IBT International Officer Mail Ballot Election is DENIED.

SO ORDERED.