**UNITED STATES of America, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendants.**

**In re APPLICATION NO. VII OF THE ELECTION OFFICER.**

**No. 88 CIV. 4486 (DNE).**

United States District Court,
S.D. New York.

March 11, 1997.

Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano, Haddonfield, NJ, (Theodore M. Lieverman, of counsel), for the Election Officer.

mented it." (Tr. 504.)

Mary Jo White, United States Attorney for the Southern District of New York, New York City (Karen B. Konigsberg, Assistant United States Attorney, of counsel), for plaintiff U.S.

Cohen, Weiss & Simon, New York City (Richard M. Seltzer, of counsel), for defendant International Brotherhood of Teamsters.

## MEMORANDUM & ORDER

EDELSTEIN, District Judge:

This opinion emanates from the voluntary settlement of an action commenced by plaintiff United States of America (the "Government") against, *inter alia*, defendants International Brotherhood of Teamsters ("IBT") and the IBT's General Executive Board embodied in the voluntary consent order entered March 14, 1989 (the "Consent Decree"). The goal of the Consent Decree is to rid the IBT of the hideous influence of organized crime through a two-phased implementation of the Consent Decree's various remedial provisions.

In the first phase of the Consent Decree, these provisions provided for three court-appointed officers: the Independent Administrator to oversee the Consent Decree's provisions, the Investigations Officer to bring charges against corrupt IBT members, and the Elections Officer to supervise the electoral process that led up to and included the 1991 election for IBT office. In the second phase of the Consent Decree, the Independent Administrator was replaced by a three-member Independent Review Board, but the position of Election Officer remained unchanged.

Currently before this Court is *Application No. VII of the Election Officer for an order Permitting Installation of Officers Prior to Certification* ("Application VII"). For the following reasons, this Court finds that Application VII should be granted.

## BACKGROUND

Pursuant to the Consent Decree and this Court's order of February 7, 1995, the Election Officer conducted the 1996 IBT union officer election. On November 7, 1996, the Election officer mailed ballots to IBT members in the United States and Canada. (Declaration of Barbara Zack Quindel in Support of Election Officer Application No. VII (For Order Permitting Installation of Officers Prior to Certification), *United States v. International Bhd. of Teamsters,* 88 Civ. 4486 ("Quindel Decl.") ¶ 4 (Feb. 18, 1997).) Those ballots began to be counted on December 10, 1996, and the count of unchallenged ballots was completed on December 14, 1996. *Id.* At that time, the Election Officer announced the winning candidates in the races for Regional Vice Presidents from Canada and the Eastern Region. *Id.*

The margins in several races, however, required challenged ballot resolution pursuant to the Rules for the IBT 1995–1996 International Union Delegate and Officer Election (the "Election Rules"). *Id.* Under Article V, Section Nine of the Election Rules, ballot challenges must be resolved if the challenges could affect the outcome of an election. *Id.* ¶ 5. In order to resolve them, challenged ballots are divided into groups and resolved by those groups in succession. *Id.* Challenged ballots from groups which are resolved in favor of eligibility are counted until such time as the number of challenged ballots remaining is too few to affect the outcome of the election. *Id.*

Pursuant to Article V, Section Nine, the Election Officer conducted the first phase of the challenged ballot resolution between December 16 and December 18, 1996. *Id.* ¶ 6. Following the first supplemental count, the Election Officer announced the results for Regional Vice–Presidents in the Central and Southern Regions. *Id.* The Election Officer and her staff then analyzed the remaining challenged ballots to determine methods for resolution. Id. The resolution of several thousand remaining challenged ballots required employer earnings verification, or other, more probing analysis of member records. *Id.* ¶ 7. The process of resolving these ballots has been time-consuming, as it has necessitated contact with approximately 1,000 employers. *Id.*

Further supplemental counts to resolve remaining groups of challenged ballots were conducted on January 8 through January 10,

1997, and January 29 through January 31, 1997. *Id.* ¶ 8. Following those counts, the Election Officer announced the winning candidates whose margins were greater than the number of challenged ballots remaining. *Id.* In addition, on February 27, 1997, the Election Officer submitted a letter to this Court stating that she had completed the fourth phase on the challenged ballot resolution, and announced the winning candidates for the remaining three positions—one At–Large Vice–President and two Western Regional Vice–Presidents. (Letter from Barbara Zack Quindel, Esq., Election Officer, to the Honorable David N. Edelstein, United States District Judge for the Southern District of New York (Feb. 27, 1997).)

Post-election protests, including requests for a recount order pursuant to Article VIII of the Supplemental Rules for the Conduct of the 1996 International Officer Mail Ballot Election ("Supplemental Election Rules"), must be filed within fifteen days of the announcement of the winning candidate. (Quindel Decl. ¶ 10.) Post-election protests have been filed following each of the Election Officer's announcements of results. *Id.* Decisions are pending in certain of these cases. *Id.* In addition, following the conclusion of the fourth supplemental count and the announcement of the remaining winning candidates, there is a fifteen-day period within which post-election protests for those positions must be filed. *Id.*

The Election Officer informs this Court that she has received a request for a recount of certain races, pursuant to Article VII, Section I of the Supplemental Election Rules. *Id.* ¶ 11. The requested recounts are scheduled to take place in March 1997. *Id.* As a result, the completion of the post-election protest and appeals process is likely to extend into April 1997. *Id.* ¶ 12.

In January 1997, the Election Officer informed the Government and the IBT that she did not intend to certify the results of the election until the completion of the post-election protest and appeals process. *Id.* ¶ 13. On January 30, 1997, IBT General President Ron Carey ("Carey") issued an IBT Constitutional interpretation that the incumbent IBT officers would remain in pow-

er until the newly-elected officers are qualified by action of the Elections Officer or Order of this Court, and the new officers are sworn in. *Id.* ¶ 14.

As a result of the timing of the events set forth above and Carey's Constitutional interpretation, the Election Officer contends that if installation of the officers who have received the highest number of votes follows the certification of the election, there will be a delay of weeks before these officers assume their positions. *Id.* In order to avoid such delay, the Election Officer brings the instant application before this Court seeking permission to install newly-elected officers prior to the election certification. (Memorandum in Support of Election Officer Application No. VII (For Order Permitting Installation of Officers Prior to Certification), *United States v. International Bhd. of Teamsters,* 88 Civ. 4486 ("Quindel Memo") at 4–5 (Feb. 18, 1997).) Both the Government and the IBT have filed papers supporting the instant application. *See* (Letter from Karen B. Konigsberg, Assistant United States Attorney, to the Honorable David N. Edelstein, United States District Judge for the Southern District of New York, ("Govt.Letter") (Feb. 27, 1997)); (Response of IBT in Support of Election Officer Application No. VII, *United States v. International Bhd. of Teamsters,* 88 Civ. 44486 ("IBT Resp.") (Feb. 27, 1997).) This Court has received no opposition to the instant application.

## DISCUSSION

Under the Consent Decree, the Election Officer was granted broad authority to supervise the rank-and-file elections of delegates to the 1991 IBT Convention, as well as the subsequent rank-and-file elections of IBT officers from among the candidates at the 1991 Convention. *United States v. International Bhd. of Teamsters [Election Officer App. VI,]* 943 F.Supp. 360, 361 (S.D.N.Y. 1996); *United States v. International Bhd. of Teamsters [1996 Election Rules Opinion],* 896 F.Supp. 1349, 1353 (S.D.N.Y.1995), *aff'd as modified,* 86 F.3d 275 (2d Cir.1996); Consent Decree, ¶ 12(D)(ix). The Consent Decree vested in the Election Officer the power "to supervise all phases of the 1991 IBT

Election. . . ." *Election Officer App. VI,* 943 F.Supp. at 361; Consent Decree, ¶ 12(D)(ix).

According to the original terms of the Consent Decree, however, the Election Officer was authorized to oversee only the 1991 IBT Election. Consent Decree, ¶¶ 3(1), 12(D)(ix). By Stipulation and Order dated February 7, 1995, the Consent Decree was amended to reflect the parties' agreement regarding the supervision of the 1995–1996 IBT International Union Delegate and Officer Election ("the 1996 IBT Election"). *See* Stipulation and Order Implementing Paragraph 12(D)(ix) of the March 19[sic], 1989 Consent Decree (S.D.N.Y. Feb. 7, 1995) ("the February 1995 Order"). The February 1995 Order states that "it is the intention of the Government and the IBT that the Election Officer function in 1996 as similarly as possible to the 1991 Election Officer." *Id.* at 2. The February 1995 Order thus conferred upon the 1996 Election Officer "all rights and duties conferred upon the 1991 Election Officer by paragraph 12 of the Consent Decree." *Id.* ¶ 1. As a result, the expansive supervisory power which the Consent Decree granted to the 1991 Election Officer remains vested in the present Election Officer as she oversees the 1996 Elections.

Both this Court and the Second Circuit repeatedly have emphasized the broad scope of the Election Officer's authority. For example, in *United States v. International Bhd. of Teamsters [Hughes & Friedman],* 723 F.Supp. 203 (S.D.N.Y.1989), *appeal dismissed,* No. 89–6252 (2d Cir.1989), this Court interpreted the term "supervise," as used in paragraph 12(D) of the Consent Decree to define the Election Officer's election oversight duties. *Id.* at 206. This Court rejected the IBT's attempt to restrict the Election Officer power to "supervise" IBT elections to a "passive or advisory" role. *Id.* Instead, this Court accepted the arguments made by the Government and the Court-appointed officers which argued that

> the term 'supervise' [should] involve an active and broad mandate to intervene in, and coordinate, the IBT electoral process. . . . The Election Officer seeks to promulgate electoral rules and procedures, educate IBT locals on the new process,

monitor candidate campaigning, devise absentee voting procedures, and certify all elections. As authority, the Court Officers and the Government define 'supervise' as a term of art used in labor law, and point to numerous cases interpreting the parallel language of the Labor Management Reporting and Disclosure Act . . . .

*Id.* In accepting that argument, this Court observed that

> [e]ven a modest definition found in Webster's Third New International Dictionary defines 'supervise' as follows: to coordinate, direct, and inspect continuously and at first hand the accomplishment of; oversee with the powers of direction and decision the implementation of one's own or another's intentions.

*Id.* This Court found that "[t]he dictionary definition is supportive of a more expansive interpretation" of the term "supervise," as used in the Consent Decree. *Id.* Finally, in *Hughes & Friedman,* this Court was "also persuaded that the parties intended the term 'supervise' as written here to represent a term of art . . . [which] should incorporate the connotations connected to its use in the labor law field," as set forth above. *Id.*

Similarly, in *United States v. International Bhd. of Teamsters,* 931 F.2d 177 (2d Cir. 1991), the Second Circuit considered a challenge to the election rules promulgated by the 1991 Election Officer which permitted each candidate for union office who had obtained petition signatures of 2.5 percent of the relevant membership pool could have his campaign literature published in the IBT's monthly magazine. *Id.* at 187. Affirming this Court's conclusion that this rule was a proper exercise of the Election Officer's oversight authority under the Consent Decree, Judge Winter explained that the publication rule was within the "Election Officer's broad authority to 'supervise' the IBT election process . . . [and][t]he Election Officer thus has substantial discretion to impose election rules and procedures that ensure that the . . . elections are free, fair and informed." *Id.*

Mindful of the extraordinary breadth of the Election Officer's authority, this Court must consider whether to grant the Election

Officer's application to install the newly-elected officers prior to the election certification. In support of this application, the Election Officer contends that this exercise of authority is appropriate in order to enable the "IBT to install the full complement of newly elected officers," and to avoid a delay of many weeks before these officers may assume their duties. (Quindel Memo at 4–5, 7.)

In its submission in support of this application, the Government asserts that "installation prior to certification is consistent with the Consent Decree and will further the orderly transition of authority to the newly elected [IBT] officers." (Govt. Letter at 1.) Likewise, the IBT maintains that "[i]t is important that the results of this democratic membership election be effected without further delay ... [which will] end any uncertainty amongst members or employers about the status of the leadership of the IBT." (IBT Resp. at 3.) The IBT further claims that, by installing the new officers prior to certification, "the [IBT] membership can have the benefit of leadership and action by its new officers ... and those officers ... can meet the responsibilities, including those under the Consent Decree, and challenges facing the IBT." *Id.*

As an initial matter, this Court notes that the Consent Decree and the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401 *et seq.*, which was enacted for the purpose of assuring full and active participation by rank-and-file members in the democratic affairs of their union, *American Fed'n of Musicians v. Wittstein,* 379 U.S. 171, 182, 85 S.Ct. 300, 306, 13 L.Ed.2d 214 (1964), both favor the speedy resolution of union elections. The Consent Decree provides that the Election Officer shall "supervise the balloting process and *certify the election results for each of these elections as promptly as Possible after balloting.*" (Consent Decree, ¶ 12(D) (emphasis added).) Similarly, Section 482(c) of the LMRDA, which addresses elections supervised by the United States Department of Labor, provides that the Secretary of Labor shall "*promptly certify* to the Court names of the persons elected, and the Court shall

thereupon enter an decree declaring such persons to be the officers of the labor organization." 29 U.S.C. § 482(c) (emphasis added).

Despite their unequivocal mandate regarding prompt election certifications, neither the Consent Decree nor the LMRDA speaks to the timing of the installation of newly-elected union officers in relation to the election certification. This is an issue of first impression for this Court with respect to the Consent Decree. Moreover, a survey of other courts which have considered the issue of whether to permit the installation of newly-elected officers prior to election certification further complicates matters by revealing inconsistent outcomes. *Compare Donovan v. Local 299, Int'l Bhd. of Teamsters,* 515 F.Supp. 1274 (E.D.Mich.1981) (installation permitted prior to certification) *with Donovan v. Millwrights Local 1914,* No. 79–837, 1982 WL 2177 (D.Ariz. May 17, 1982) (installation after certification).

Despite the lack of clear authority addressing the timing of installation in relation to certification under the LMRDA, it is apparent that the LMRDA requires the prompt implementation of union election results. In *Singleton v. Cory,* 465 F.Supp. 14 (S.D.N.Y. 1978), for example, an incumbent union officer who had lost a reelection bid sought a preliminary injunction to keep him in office and to prevent the newly-elected challenger from taking office, pending the resolution of the incumbent's election challenges. *Id.* at 15. In denying the plaintiff incumbent's preliminary injunction, then-Judge (now Chief Judge) Griesa relied in part upon the legislative purpose behind Section 482(a) of the LMRDA. *Id.* at 21. Judge Griesa first observed that "the statute does appear to indicate a Congressional purpose, in a general way, to have the results of a labor union election carried out promptly without being delayed by a court proceeding." *Id.* Based upon that observation, and the fact that the union election, at the time of his decision, favored the defendant despite challenges, the defendant's "installation should not be delayed further pending the outcome of the present case." *Id.*

This Court finds that *Singleton*'s construction of the legislative purpose of Section 482 of the LMRDA applies equally to the Consent Decree. As noted above, paragraph 12(D) of the Consent Decree provides that the Election Officer shall "supervise the balloting process and certify the election results for each of these elections as promptly as possible after balloting." (Consent Decree ¶ 12(D).) Like that of the LMRDA, the clear purpose of this language is to direct the Election Officer to implement the results of the IBT's democratic process forthwith. Accordingly, inherent in the Election Officer's expansive oversight authority is the power to install newly elected IBT officers prior to certification. As a result, this Court finds that the instant application should be granted.

### CONCLUSION

IT IS HEREBY ORDERED THAT Election Officer Application VII for an order permitting the installation of officers prior to certification is GRANTED.

SO ORDERED.