**UNITED STATES of America,
Plaintiff–Appellee,**

**Election Officer, Appellee,**

**v.**

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO; The Commission of La Cosa Nostra; Anthony Salerno, also known as Fat Tony; Matthew Ianniello, also known as Matty the Horse; Anthony Provenzano, also known as Tony Pro; Nunzio Provenzano, also known as Nunzi Pro; Anthony Corallo, also know as Tony Ducks; Salvatore Santoro, also known as Tom Mix; Christopher Furnari, Sr., also known as Christie Tick; Frank Manzo; Carmine Persico, also known as Junior, also known as The Snake; Gennaro Langella, also known as Gerry Lang; Philip Rastelli, also known as Rusty, Nicholas Marangello, also known as Nicky Glasses; Joseph Massino, also known as Joey Messina; Anthony Ficarotta, also known as Figgy; Eugene Boffa, Sr.; Francis Sheeran; Milton Rockman, also known as Maishe; John Tronolone, also known as Peanuts; Joseph John Aiuppa, also know as Joey O'Brien, also known as Joe Doves, also known as Joey Aiuppa; John Phillip Cerone, also known as Jackie the Lackie, also known as Jackie Cerone; Joseph Lombardo, also known as Joey the Clown; Angelo Lapietra, also known as The Nutcracker; Frank Balistrieri, also known as Mr. B; Carl Angelo DeLuna, also known as Toughy; Carl Civella, also known as Corky; Anthony Thomas Civella, also known as Tony Ripe; General Executive Board International Brotherhood Of Teamsters, Chauffeurs, Warehousemen And Helpers Of America; Jackie Presser, General President; Weldon Mathis, General Secretary–Treasurer; Joseph Trerotola, also known as Joe T, First Vice President; Robert Holmes, Sr., Second Vice President; William J. McCarthy, Third Vice President; Joseph W. Morgan, Fourth Vice President; Edward M. Lawson, Fifth Vice President; Arnold Weinmeister, Sixth Vice President; John H. Cleveland, Seventh Vice President; Maurice R. Schurr, Eighth Vice President; Donald Peters, Ninth Vice President; Walter J. Shea, Tenth Vice President; Harold Friedman, Eleventh Vice President; Jack D. Cox, Twelfth Vice President; Don L. West, Thirteenth Vice President; Michael J. Riley, Fourteenth Vice President; Theodore Cozza, Fifteenth Vice President; Daniel Ligurotis, Sixteenth Vice President; Salvatore Provenzano, Former Vice President, also known as Sammy Pro, Defendants,**

**Teamsters Local 1150, Appellant.**

**No. 1453, Docket 95–6248.**

United States Court of Appeals,
Second Circuit.

Argued April 3, 1996.

Decided June 13, 1996.

272

Patrick J. Szymanski, Baptiste & Wilder, Washington, D.C. (Robert M. Baptiste, of counsel) for Appellant.

Karen B. Konigsberg, Assistant United States Attorney, Southern District of New York, New York City (Mary Jo White, United States Attorney, Steven M. Haber, Assistant United States Attorney, of counsel) for Plaintiff–Appellee.

Theodore M. Lieverman, Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano, Haddonfield, New Jersey (Robert F. O'Brien, of counsel) for Appellee the Election Officer.

Before WINTER, JACOBS and CALABRESI, Circuit Judges.

WINTER, Circuit Judge:

This is another appeal arising from the 1989 Consent Decree between the government and the International Brotherhood of Teamsters ("IBT"). Teamsters Local 1150 appeals from Judge Edelstein's approval of rules governing the 1996 election of delegates to the IBT Convention and of IBT officers. The principal issue is whether a rule requiring a court-appointed officer to review and approve all Union-financed publications prior to distribution during the election period is lawful. We remand so that the rule can be modified but hold that, as modified, the rule is valid.

This litigation has been extensively reported. *United States v. International Bhd. of Teamsters ("Sansone")*, 981 F.2d 1362, 1364 (2d Cir.1992) ("The volume of our decisions arising from the Teamsters Litigation has already been chronicled.") (citation omitted); *see also United States v. International Bhd. of Teamsters ("Roadway Express")*, 3 F.3d 634 (2d Cir.1993); *United States v. International Bhd. of Teamsters ("Star Market")*, 954 F.2d 801 (2d Cir.), *cert. denied,* 505 U.S. 1205, 112 S.Ct. 2993, 120 L.Ed.2d 870 (1992); *United States v. International Bhd. of Teamsters ("Senese & Talerico")*, 941 F.2d 1292

(2d Cir.1991), *cert. denied,* 502 U.S. 1091, 112 S.Ct. 1161, 117 L.Ed.2d 408 (1992); *United States v. International Bhd. of Teamsters ("1991 Election Order"),* 931 F.2d 177 (2d Cir.1991), and we review only briefly the circumstances underlying the instant dispute.

In June 1988, the government brought a civil RICO action against the IBT, some of its officers, and various reputed members and associates of La Cosa Nostra. The complaint alleged, *inter alia,* corruption of the IBT's electoral processes. Specifically, it alleged that La Cosa Nostra, aided and abetted by members of the IBT's General Executive Board, had manipulated those processes to elect its preferred candidate as IBT General President, otherwise to control Union affairs, and to deprive the membership of free and fair elections.

In March 1989, the district court approved a Consent Decree that mandated sweeping changes in the IBT's electoral and disciplinary processes. The Decree created several positions, to be filled by the district court, with varying responsibilities for carrying out the Consent Decree. In particular, it provided for an Election Officer, who is authorized to "impose election rules and procedures that ensure that the ... elections are free, fair and informed." *1991 Election Order,* 931 F.2d at 187. Pursuant to this authority, the present Election Officer, Amy Gladstein, submitted for the district court's approval proposed "Rules for the 1995–1996 IBT International Union Delegate and Officer Election" ("1996 Election Rules"). Local 1150 submitted objections to a number of these Rules, including a First Amendment challenge to Article VIII, Section 8(e), which requires the Election Officer to review and approve all Union-financed publications during the election period. Judge Edelstein overruled the objection, holding that the Election Officer is not a state actor and that consequently there was no constitutional violation. *United States v. International Bhd. of Teamsters,* 896 F.Supp. 1349, 1364 (S.D.N.Y.1995). Judge Edelstein also rejected Local 1150's objections to various other Rules, adopting the proposed Rules in their entirety. *Id.* at 1373.

On appeal, Local 1150 presses five of its original objections. Except for questions relating to Article VIII, Section 8(e), Local 1150 advances no colorable argument that the Rules in question are either unreasonable or beyond the authority of the Election Officer. Essentially, the objections are quibbles, and, as to every challenge save that to Article VIII, Section 8(e), we affirm Judge Edelstein without further discussion.

■ Article VIII, Section 8(e), provides:
For the purpose of assuring compliance with the *Rules,* every Union-financed publication to be mailed or otherwise distributed to the membership between October 1, 1996 and December 20, 1996 shall be submitted to the Election Officer by the publishing body for review and approval prior to publication.

(emphasis in original). The Rule involves a period just prior to and during the balloting for delegates to the IBT Convention and IBT officers. The parties have spilt considerable ink over whether the Election Officer is a state actor in promulgating and enforcing this Rule and whether the provision in question is therefore an unlawful prior restraint under the First Amendment. We view the issue somewhat differently.

In *1991 Election Rules,* we held that the Election Officer might require the IBT to publish candidates' campaign literature in the IBT's monthly magazine as an appropriate measure under the Consent Decree to inform the union's rank and file about the various candidates. 931 F.2d at 187–88. In response to the IBT's claim that a rule requiring publication violated the First Amendment, we held that it had waived any such argument by entering into the Consent Decree. *Id.* at 188.

Of course, the described portion of the holding in *1991 Election Rules* applied only to the IBT as a party to the Consent Decree and to the IBT's monthly magazine. The present dispute, in contrast, involves a challenge by a non-party local union asserting the local's rights to distribute publications freely to its membership. The questions before us are, first, whether Article VIII, Section 8(e), is authorized by the Consent Decree, and, second, if so, whether a local union

may challenge its validity under the First Amendment. Our discussion begins with an analysis of whether the Consent Decree authorizes such a Rule.

As presently drafted, Article VIII, Section 8(e), is rather broad. The Election Officer's power to review and approve local Union publications during the relevant time-period is limited only by the phrase "[f]or the purpose of assuring compliance with the *Rules*." (emphasis in original). Whether or not every First Amendment precedent applicable to the press's right to publish free of governmental control applies to Local 1150—the issue debated by the parties—principles of free speech inform our analysis of the scope of the Election Officer's responsibility to "ensure that [IBT] ... elections are free, fair and informed." There is nothing in the Consent Decree or in its underlying purpose that would justify a rule allowing broad censorship by the Election Officer. However, we need not pause to determine the precise breadth of the Election Officer's powers under Article VIII, Section 8(e) because post-argument submissions by the government and the Election Officer have informed us that the intent of that provision is considerably narrower than its language. The Rule is, we are assured, intended only to prevent Union-financed publications from endorsing or supporting particular candidates for Union office. Specifically, it is to ensure compliance with Article VIII, Sections 8(a) and 11(b)–(c) and Article XII, Sections 1(b)(1) and (3) of the Rules, which broadly prohibit the use of Union funds to support or oppose particular candidates.

So narrowed, we believe that Article VIII, Section 8(e), is well within the scope of the Election Officer's authority. Significantly, Local 1150 makes no claim that Article VIII, Sections 8(a) and 11(b)–(c) and Article XII, Sections 1(b)(1) and (3) are themselves invalid. Rules prohibiting the use of Union funds—and thus Union-financed publications—to support or oppose candidates for IBT office are important measures for bringing democratic control to the IBT and for ridding it of influence by criminal elements. Allowing the use of Union-controlled resources to influence IBT elections would give an advantage over their opponents to candidates supported by those who control the funds of local unions. It might also allow criminal elements to continue their powerful voice in Union affairs. The Rules are thus reasonably related to the goal of "free, fair and informed" elections. The only issue, therefore, is whether Article VIII, Section 8(e), is a reasonable means of enforcing those Rules. We hold that it is.

First, Section 8(e) is the most effective—if not the only effective—measure to prevent violations of the Rules in question. For example, if a publisher of a Union newsletter decides that the candidate it favors is about to be defeated, it has little to lose, absent such review, in using the newsletter to attempt to alter the outcome. At worst, its preferred candidate will still lose. At best, the candidate will win. The Election Officer must then decide whether to order a rerun election, an issue that will be litigated to the fullest. The rerun election, if any, will take place months or even years later. Absent prior review, Section 8(e) is not a substantial deterrent.

Second, the danger of overreaching by the Election Officer is minimal. A local union can always challenge the Election Officer's disapproval of a publication in the district court. Such a proceeding could be conducted on an expedited basis, and the burden would be on the Officer to show that the publication violated any of Article VIII, Sections 8(a) and 11(b)–(c) and Article XII, Sections 1(b)(1) and (3). The Election Officer thus has no uncabined, unreviewable power under Article VIII, Section 8(e).

Article VIII, Section 8(e) is therefore authorized by the Consent Decree. However, we believe that a remand is necessary to amend the Rule explicitly to state its limited scope: review and approval of Union publications is solely for the purpose of enforcing Article VIII, Sections 8(a) and 11(b)–(c) and Article XII, Sections 1(b)(1) and (3).

■ The only remaining issue is whether local affiliates are disabled by the Consent Decree from challenging Article VIII, Section 8(e) on grounds other than the Election Officer's lack of authority to promulgate it under the Decree. We believe they are so

disabled. In *1991 Election Rules,* we addressed the question whether affiliated local unions, which are not parties to the Consent Decree, were bound by Rules promulgated by the Election Officer that radically altered the method of selecting delegates to the IBT Convention and IBT officers, in particular by providing for direct election by the rank-and-file membership. *Id.* at 184–87. We held that the locals were so bound even though the new Rules were inconsistent with the IBT Constitution and thus arguably violated the locals' contractual rights. *Id.* We reasoned that the local affiliates did not have a legitimate interest separate from that of the collective membership in ridding the Union of the influence of organized crime or in determining how delegates and IBT officers might be freely and fairly selected. *Id.* at 186. Indeed, we perceived a conflict between local affiliates—or those who control them—and the interests of the rank and file in voting for delegates. *Id.* Under the IBT Constitution, local officers were *ex officio* delegates, and the delegates selected the IBT officers. The asserted interest of the affiliates was to deny direct election by the members, leaving power in those who controlled the locals. *Id.* Had the IBT not agreed to the Consent Decree and the allegations of the complaint been proven, a trustee with plenary power to override the rights of local affiliates might have been appointed. *Id.* at 186–87. We held that the legitimate interests of the rank and file and the local affiliates coincided regarding the Rules in question and that the legitimate interests of the locals were consequently represented by the IBT in entering into the Consent Decree. *Id.* We concluded that the local affiliates were bound by the Consent Decree, at least with regard to the challenged rules. *Id.* Given the additional holding of *1991 Election Rules* that the IBT itself cannot mount a First Amendment challenge to Rules governing its publications, *id.* at 188—in contrast to claiming a lack of authority to promulgate them under the Consent Decree—the question before us is whether a local affiliate may mount such a challenge to the Rule at issue in the present matter. We hold that it may not.

Like the Rules challenged in *1991 Election Rules,* Article VIII, Section 8(e) furthers the Consent Decree's goals of eliminating the influence of organized criminal elements from the union and of establishing democratic processes. We perceive no legitimate institutional interest of local affiliates that is distinct from the collective interests of the membership regarding the enforcement of the Rules prohibiting such uses of Union funds. Indeed, as in *1991 Election Rules,* the interests of those who control local unions and their treasuries may be adverse to those of the membership. The establishment of a somewhat level playing field is in the membership's interest, whereas local officialdom will prefer to be at the high end of a steep slope. We therefore hold that local affiliates are bound by the Consent Decree to limit any challenge to Article VIII, Section 8(e) to whether it is authorized by the Decree.

As modified above, the Rule is a valid exercise of the Election Officer's authority under the Decree, and we need not address the state action and First Amendment issues. We therefore remand for the modification described in this opinion.