UNITED STATES of America, Plaintiff,

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendant.**

**In re APPLICATION X OF the ELECTION OFFICER.**

**No. 88 CIV. 4486(DNE).**

United States District Court,
S.D. New York.

Sept. 29, 1997.

Opinion Extending Timetable
Oct. 20, 1997.

---

Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano (Theodore M. Lieverman, of counsel), Haddonfield, NJ, for Election Officer, Barbara Zack Quindel.

London & Mead (Christopher B. Mead, of counsel), Washington, DC, for Jere B. Nash III.

Mary Jo White, U.S. Atty., S.D. New York (Karen B. Konigsberg, Asst. U.S. Atty, of counsel), New York City, for Plaintiff U.S.

Zuckerman, Spaeder, Goldstein, Taylor & Kolker, L.L.P. (Edward J.M. Little, of counsel), New York City, for Defendant Intern. Broth. of Teamsters.

Goldman & Hafetz (Frederick P. Hafetz, of counsel), New York City, for Cohen, Weiss & Simon.

## MEMORANDUM & ORDER

EDELSTEIN, District Judge.

### BACKGROUND

This opinion emanates from the voluntary settlement of an action commenced by the

United States of America against, *inter alia,* the International Brotherhood of Teamsters ("IBT" or "the Union") and the IBT's General Executive Board. The settlement is embodied in the voluntary consent order entered March 14, 1989 ("Consent Decree"). The goal of the Consent Decree is to rid the IBT of the hideous influence of organized crime through a two-phased implementation of the Consent Decree's various remedial provisions. In the first phase of the Consent Decree, these provisions provided for three court-appointed officers: the Independent Administrator to oversee the Consent Decree's provisions; the Investigations Officer to bring charges against corrupt IBT members; and the Election Officer to supervise the electoral process that led up to and including the 1991 election for IBT International Union Office. In the second phase of the Consent Decree, the IA was replaced by a three-member Independent Review Board ("IRB"), but the position of Election Officer remained unchanged. Further, paragraph 12(D)(ix) of the Consent Decree provides that "the union defendants consent to the Election Officer, at Government expense, to supervise the 1996 IBT Elections."

### FACTS

Under the Consent Decree, the Election Officer was responsible for supervising the rank-and-file elections of delegates to the 1991 IBT Convention as well as the subsequent rank-and-file elections of IBT officers from among the candidates nominated at the 1991 IBT Convention. July 10, 1990 Opinion & Order, 742 F.Supp. 94, 97 (S.D.N.Y.1990), *aff'd as modified, United States v. International Bhd. of Teamsters,* 931 F.2d 177 (2d Cir.1991). Pursuant to the authority vested in the Election Officer to supervise all phases of the 1991 IBT Election by paragraph 12(D)(ix) of the Consent Decree, the Election Officer promulgated a set of rules governing the general conduct of the 1991 IBT Election, which was presented for this Court's review. *Id.*

According to the original terms of the Consent Decree, the Election Officer was authorized to oversee only those matters and disputes concerning the 1991 IBT Election.

Consent Decree, ¶¶ 3(1), 12(D)(ix). By Stipulation and Order dated February 7, 1995, however, the Consent Decree was amended to reflect the parties' agreement regarding the supervision of the 1995–1996 IBT International Union Delegate and Officer Election ("the 1996 Election"). *See* Stipulation & Order Implementing Paragraph 12(D)(IX) of the March 19[sic], 1989 Consent Decree (S.D.N.Y. Feb. 7, 1995) ("the February 7, 1995 Order"). The February 7, 1995 Order states that "it is the intention of the Government and the IBT that the Election Officer function in 1996 as similarly as possible to the 1991 Election Officer," *id.* at 2, and grants the 1996 Election Officer ("the Election Officer") "all rights and duties conferred upon the 1991 Election Officer by paragraph 12 of the Consent Decree," *id.* ¶ 1, including "the authority granted by Paragraph 12(I) of the Consent Decree to make applications to the Court, after giving notice to specified parties." *Id.* ¶ 3(c). Furthermore, the February 7, 1995 Order provides for the appointment of an Election Appeals Master to hear disputes about the conduct of the 1995–96 IBT election or the results of that election. *Id.* at ¶ 2.

Pursuant to her authority under the Consent Decree and the February 7, 1995 Order, the Election Officer submitted for this Court's approval the rules for the 1995–1996 IBT International Union Delegate and Officer Election ("the 1996 Election Rules"). On August 22, 1995, this Court approved the 1996 Election Rules in their entirety. August 22, 1995 Opinion & Order, 896 F.Supp. 1349, 1353 (S.D.N.Y.1995), *aff'd as modified, United States v. Ali,* 86 F.3d 275 (2d Cir. 1996). On appeal, the Second Circuit affirmed this Court, but held that one provision of the 1996 Election Rules was overly broad, and remanded the issue to this Court to amend the provision in question. *United States v. International Bhd. of Teamsters,* 86 F.3d 271 (2d Cir.1996). This Court modified the rule in accordance with the Second Circuit's opinion. June 18, 1996 Opinion & Order, 928 F.Supp. 392 (S.D.N.Y.1996).

The 1996 Election took place and the ballot count concluded on February 27, 1997. *See* Declaration of Barbara Zack Quindel, dated

August 21, 1997 ("Quindel decl.") at ¶ 4. As the count proceeded, the Election Officer announced the winning candidates for various offices. Following the announcements, post-election protests were filed. Quindel decl. ¶ 4. The Election Officer conducted an investigation of the post-election protests and uncovered serious violations of the 1996 Election Rules.[1]

On August 21, 1997, the Election Officer granted certain post-election protests, finding that violations of the 1996 Election Rules "may have affected the outcome of the election." Quindel decl. ¶ 5; *see* 1996 Election Rules, Article XIV, Section 3(b) (stating that the Election Officer cannot grant a post-election protest unless "the alleged violation may have affected the outcome of the election...."). Specifically, the Election Officer found that "[t]here is no doubt that all of the contributions to [the Teamsters for a Corruption Free Union ('TCFU'),]" a fundraising committee of the Ron Carey Campaign, were "prohibited contributions." *Cheatem,* Post–27, et seq. EOH at 95. The Election Officer found that "the contributions [to TCFU] were the product of employer solicitations and/or employer-created schemes to inject employer and IBT funds into the Carey Campaign, as well as to induce individuals to contribute through the improper manipulation of IBT spending." *Id.* at 96. Furthermore, the Election Officer stated that "[t]hese were egregious violations by high level campaign functionaries who believed winning at all costs was more important than abiding by the [1996 Election Rules] and the law." *Id.* at 114. Based on these findings, the Election Officer issued her decision refusing to certify the results of the 1996 Election and ordering a new election for all positions except for Central Region Vice Presidents and the President of Teamsters Canada. *Id.,* at 114–15.

Two years ago this Court reviewed the proposed rules for the 1996 Election. At that time this Court stated that:

[i]t is of paramount importance that the same spirit of vigilance that vitalized the 1991 IBT election energize the 1995–96 IBT election process if the arduous and painstaking work of implementing the Consent Decree is to be preserved and built upon. It cannot be said too often that the minions of organized crime continue to haunt the IBT.

These invidious enemies of union democracy continue to thrive with a perverse and persistent energy. Rank and file Teamsters will watch this election with the hope that the Union will continue to be free and democratic. They will constantly be asking themselves whether the Union truly belongs to them.

August 22, 1995, Opinion & Order, 896 F.Supp. 1349, 1353 (S.D.N.Y.1995), *aff'd as modified,* 86 F.3d 275 (2d Cir.1996). As this Court has noted, the Consent Decree is "a unique attempt to cleanse this union." July 10, 1990, Opinion & Order, 742 F.Supp. at 97, *aff'd as modified,* 931 F.2d 177 (2d Cir.1991). It is impossible to exaggerate the importance of maintaining free and democratic IBT elections. The election rules continue to be "the linchpin in that effort." *Id.* The 1996 Election Rules were intended to ensure an honest, fair, and free election. Unfortunately, noncompliance with the 1996 Election Rules by unscrupulous people has thwarted that objective. The sinister forces of corruption have again found a way to hamper IBT's progress toward a democratic Union, thus requiring this Court to reexamine the 1996 Election Rules and review the proposed changes for the now necessary Rerun Election. Nevertheless, it is important to recog-

---

**1.** The Consent Decree prohibits any contribution "or other things of value" to a candidate from an employer. Consent Decree ¶ 8 (amending Article IV, Section 2 of the IBT Constitution). The ban on employer contributions "reflects a desire to minimize the danger that employers will influence the outcome of union elections." *United Steelworkers of America v. Sadlowski,* 457 U.S. 102, 117, 102 S.Ct. 2339, 2348, 72 L.Ed.2d 707 (1982). Article XII, of the 1996 Election Rules also prohibits an employer from contributing, and a candidate from accepting, anything of value "where the purpose, object or foreseeable effect ... is to influence, positively or negatively, the election of a candidate." 1996 Election Rules, Article XII, Section 1(b)(1). Furthermore, the 1996 Election Rules and the Labor Management Reporting and Disclosure Act ("LMRDA") prohibit labor unions from making any contributions to a candidate. 1996 Election Rules, Article XII, Section 1(b)(1) & Article XIII, Section 1; 29 U.S.C. § 481(g).

nize that the process imposed by the Consent Decree was successful in that it exposed the contemptible parties thus preventing them from reaping the benefits of their despicable schemes. This Court and its appointed officers remain dedicated to the goal of union democracy. An honest, fair and informed election is of paramount importance as this Union continues on its path to rid itself of the remains of corruption and deceit.

## DISCUSSION

The Election Officer's duties consist of supervising the nominations and elections of Local Union delegates, and the elections of International Union officers. Under the Consent Decree, "the Election Officer is vested with broad authority to supervise each and every facet of the 1996 IBT election." October 29, 1996, Opinion & Order, 943 F.Supp. 360, 364 (S.D.N.Y.1996). *Accord* July 10, 1990, Opinion & Order, 742 F.Supp. at 106 (S.D.N.Y.1990), *aff'd as modified,* 931 F.2d 177 (2d Cir.1991). It is well within the Election Officer's "substantial discretion to impose election rules and procedures that ensure that the upcoming elections are free, fair and informed." *United States v. International Bhd. of Teamsters,* 931 F.2d 177, 187 (2d Cir.1991). The 1996 Election Rules specifically contemplate the possibility that the Election Officer will order a rerun election. The Rules state that "[s]hould the Election Officer refuse to certify any election, she shall then immediately order that a rerun election be held, including, if necessary, the rerunning of the nomination process." 1996 Election Rules, Article XIV, Section 5.

■ It has been suggested by the Hoffa Slate that because the Election Officer has expressed her intent to resign after the Rerun Election Rules are put in place, this Court should delay in implementing a rerun plan so that the new Election Officer may have an opportunity to review the plan and suggest modifications. *Statement of the Hoffa Slate Re: Election Officer Application X* ("Hoffa br."), at 4. This Court finds no reason why there should be delay in implementing a rerun election plan. The Proposed Rerun Plan must be evaluated on its merits, independent of who occupies the position of Election Officer. Although a new individual will be serving as the Election Officer in the near future, there is only one Election Officer at any one time, and her duty is to move the process forward. Therefore, because the Election Officer decided not to certify the 1996 Election, the immediate promulgation of the Rerun Plan is appropriate as required by Article XIV, Section 3(e) of the 1996 Election Rules.

The instant application, *Election Officer's Application X, for Approval of Proposed Rerun Election Plan* ("Proposed Rerun Plan" or "Rerun Election Rules"), presents for this Court's review the proposed rules for the IBT International Officer Rerun Election ("the Rerun Election"). In its papers submitted in response to the Proposed Rerun Plan, the Government supports the proposed rules for the Rerun Election and requests that this Court grant the application in its entirety. *Government Response to Election Officer Application No. X,* at 10. Additionally, the Ron Carey No Corruption—No Dues Increase Slate also has endorsed the Rerun Election Rules in its entirety. *Memorandum of Law of the Ron Carey No Corruption—No Dues Increase Slate in Response to the Election Officer's Application X, for Approval of Proposed Rerun Election Plan,* at 8. However, the James Hoffa Slate has submitted numerous objections to the proposed rules. Hoffa br. at 5–17. In comprehensive reply papers, the Election Officer opposes each of these objections with the exception of one raised by the Hoffa Slate. *Reply Memorandum in Support of Election Officer Application X, for Approval of Proposed Rerun Election Plan* ("Election Officer Reply Mem.").

For examination purposes, the proposed Election Rules for the Rerun Election may be divided into three groups: (1) proposed rules that parallel the election rules adopted during the 1996 Election and have not been objected to; (2) proposed rules that modify the 1996 Election Rules and have not been objected to; and (3) proposed rules that modify the 1996 Election Rules. that are the subject of objections. Furthermore, there are several additional objections and propos-

als concerning the Rerun Election rules. Each of these matters is discussed in turn.

### I. Proposed Rerun Election Rules that Parallel the 1996 Election Rules and Have Not Been Objected To.

The Rerun Election Rules substantially parallel the 1996 Election Rules. The election rules proposed for the 1996 Election were adopted by this Court in an Opinion and Order dated August 22, 1995. See August 22, 1995 Opinion & Order, 896 F.Supp. 1349. This Court's decision was affirmed on appeal, subject to one amendment relating to the scope of Article VIII, Section 8(e) of the 1996 Election Rules. *United States v. International Bhd. of Teamsters,* 86 F.3d 271 (2d Cir.1996).

This Court remains satisfied with the proposed rules for the Rerun Election that parallel the 1996 Election Rules and have not been objected to. As this Court noted in 1996, "[m]aintaining a set of election rules that is, for the most part, already familiar to the IBT, its membership, and IBT employers will facilitate the election process." August 22, 1995, Opinion & Order, 896 F.Supp. at 1355. Accordingly, this Court approves and adopts the proposed rules that parallel the 1996 IBT Election Rules and that have not been objected to.

### II. Proposed Rerun Election Rule that Modifies the 1996 Election Rule and That Has Not Been Objected To.

While the Proposed Rerun Plan is substantially similar to the Rules adopted for the 1996 Election, the Election Officer has proposed certain modifications. The modifications proposed by the Election Officer are based upon her experience in supervising the conduct of the 1996 Election, and the circumstances that led to the need for the Rerun Election. The following is a review of the proposed modification not objected to by the Hoffa Slate.

The Proposed Rerun Election Plan maintains the 60–day notice period for the Notice of Election as contained in Article V, Section 2 of the 1996 Election Rules. Proposed Rerun Plan Article III, Section B. Notices will be posted at all work sites, utilizing the same procedure followed in the initial election. *Id.* In addition, the Notice of Election will be contained in the special edition of *The Teamster,* a magazine issued by the IBT, mailed to members shortly before they receive their ballots. *Id.* Because the proposed change does not substantially alter the prior provision of the 1996 Election Rules, and since no objections have been made to its inclusion in the Proposed Rerun Plan, this Court sees no reason to change the Election Officer's revisions for the Notice of Election.

### III. The Proposed Rerun Election Rules That Modify the 1996 Election Rules That Are the Subject of Objections.

In its brief, the Hoffa Slate submitted a memorandum to this Court listing numerous objections to the Election Officer's proposed rules for the Rerun Election and setting forth several modifications and additions that the Slate believes would make the plan workable while remaining consistent with the goals of the Consent Decree. Hoffa br. at 1. The objections and proposed modifications and additions are set out below and will be addressed by this Court individually.

### A. Nominations for Rerun Candidates

The 1996 Election Rules provide that the Election Officer may, if necessary, order the rerun of nominations. 1996 Election Rules, Article XIV, Sections 4(w) and 5. The Proposed Rerun Plan calls for supplemental nominations for persons who had not previously qualified as nominees in the 1996 Election. Proposed Rerun Plan, Article I, Section C. Any previously nominated candidates need not seek renomination. *Id.* at Article I, Section A. The Proposed Rerun Plan provides for a mail ballot for supplemental nominations by previously elected delegates elected for the 1996 IBT Convention. *Id.* at Article I, Section C.

The Hoffa Slate protests that the Election Officer's Proposed Rerun Plan fails to include a provision for nominations. Hoffa Statement at 5. Asserting that there should be a "meaningful" nomination process, the Hoffa Slate urges that the election plan provide for a nominating convention. In partic-

ular the Hoffa Slate suggests a one-day convention where delegates would appear in person to effectuate any supplemental nominations. Hoffa br. at 5–6. In the alternative, the Hoffa Slate proposes a nominating process where perspective nominees would collect affidavits listing a qualified nominator and seconder and providing space for the candidate, nominator, and seconder to write any remarks they would have made at an in-person convention. *Id.* Under this plan, the names of nominated candidates would then be listed on the ballots sent to the delegates. *Id.*

This Court finds such proposals to be an unnecessary waste of already limited funds needed to pay for the Rerun Election. The purpose of a Rerun Election is not to restart the entire election process. The goal is to repeat only those parts of the process necessary to run an honest and fair election. The Election Officer's plan providing for supplemental nominations meets this goal, and does so without adding pressure to the already precarious issue of funding the Rerun Election. In addition to the extra costs of the Hoffa Slate proposals, such a nomination process would most certainly delay the Rerun Election for months.

### B. Slates

■ It has been suggested by the Hoffa Slate that the Proposed Rerun Plan "be clarified to make clear that any candidate, whether previously nominated or newly nominated, is free to join any slate." Hoffa br. at 7. While the Election Officer has stated that she does not object to such a clarification, this Court finds reason to reject such a proposal. Although this Court agrees that a new candidate should be allowed to choose any slate they desire, a previously slated candidate should not be permitted to do so. While it is a procedurally simple enough decision to switch slates during the course of an election under ordinary circumstances, the Rerun Election of the 1996 IBT Election can hardly be described as ordinary. This Court finds that a provision enabling already slated candidates to switch slates at this point creates a window of opportunity for harassment, coercion, intimidation, threats, or other "strong-arm" tactics. Such manipulation could prevent the running of a fair and honest election creating the need for yet another costly rerun. As the old adage suggests, "a stitch in time saves nine." Prudence thus dictates that it is in the best interests of the election process that previously slated candidates remain with their respective slates. Furthermore, as previously noted, the purpose of the Rerun Election is not to restart the entire election process, but merely to repeat the necessary components to ensure the integrity of the election process.

### C. Union Publications

■ The 1996 Election Rules required pre-publication approval of all Union periodicals. The Proposed Rerun Plan calls for a "special edition" of *The Teamster* magazine to be sent to members shortly before the ballots for the Rerun Election are mailed. Proposed Rerun Plan, Article IV, Section A. "[T]he Election Officer shall supervise and control all aspects of production and distribution of this issue." *Id.* The special edition shall contain the Notice of Election and Nominated Candidates, and candidate campaign materials. *Id.* Furthermore, the Proposed Rerun Plan imposes a temporary suspension on Union publications during the four weeks prior to the mailing of the ballots and the four weeks thereafter. *Id.* at Article IV, Section B. However, "[t]he temporary suspension does not cover letters, leaflets, notices or other types of communications that are not part of a periodically produced and distributed publication." *Id.* Nevertheless, these publications are still prohibited from containing campaign material under Article VII, Section 8(a) of the [1996 IBT Election Rules] *Id.*

The Hoffa Slate argues that the original rule requiring pre-publication approval of all union publications "appeared to work well" and that there is "no reason to change it." Hoffa br. at 8. Nevertheless, this Court is convinced, in view of the Election Officer's findings in *Cheatem*, that a temporary burden on the Union is justified to preserve a neutral atmosphere free from prohibited union finance campaigning. Moreover, pre-publication review of all publications from the

IBT, approximately 560 local unions, and other affiliates places a substantial burden on the Election Officer's staff and creates additional expense. The Proposed Rerun Plan achieves the goal of preserving a neutral atmosphere with far less effort and cost.

Additionally, the Hoffa Slate opposes the publication of the special election edition of *The Teamster*, arguing that few members would read such an issue. This argument is without merit. The Hoffa Slate has not provided this Court with any evidence to support its assertion that few members would read the magazine. Due to the extensive media coverage of the Election Officer's decision not to certify the 1996 Election, this Court is confident that IBT members' interest in the Rerun election, and consequently the special edition of the magazine, will continue to be intense.

D. Campaign Contributions & Reporting Requirements

 The Election Officer's decision to rerun the 1996 Election was based on findings of improper campaign contributions to the Carey campaign from non-members. *Memorandum of Law in Support of Election Officer Application X on Proposed Rerun Election Plan* ("Election Officer Mem."), at 8. Accordingly, the Proposed Rerun Plan sets forth a number of more stringent restrictions on campaign contributions and has enhanced the disclosure requirements for such contributions. The Hoffa Slate has objected to each of the Election Officer's proposals in this area.

The Proposed Rerun Plan sets forth the following restrictions on campaign contributions in addition to those that parallel the 1996 Election Rules: (1) no candidate may solicit or accept contributions from any non-member of the IBT, except as specified; (2) no candidate may contribute more than $5,000 to the rerun election; and (3) no member may contribute more than $1,000 to the rerun election. Proposed Rerun Plan, Article V, Section A.

The substance of the Hoffa Slate's objections and proposed remedies are that it wants to allow larger campaign contributions than the Election Officer has advised. The

Hoffa Slate suggests that the limit on member contributions should be $1000 to any one candidate, and $5,000 in the aggregate. Hoffa Br. at 9. It argues that the $1,000 limit on member contributions is "vague, creates administrative nightmares for candidates, and unreasonably restricts members from contributing to the support of multiple candidates." *Id.* Similarly, the Hoffa Slate suggests that a candidate should be permitted to contribute up to $25,000 to his or her own campaign. *Id.* at 9–10.

The Hoffa Slate attempts to justify this proposal by alleging that the Election Officer's proposed limit will create an unfair advantage for incumbents since incumbents will be "free to schedule all kinds of meetings and rallies at time [sic] and places advantageous to [their] campaign[s]." Hoffa br. at 10. In addition, the Hoffa Slate argues that the higher contribution limits for candidates should apply to slate members who are not running for election in the rerun but were part of a slate during the 1996 Election, and also that retirees should be treated as members for purposes of campaign contributions. *Id.* Finally, the Hoffa Slate recommends that the higher candidate limits only apply with respect to candidates who stand for reelection, not to members who are nominated and then withdraw prior to the deadline. *Id.* at 10–11.

The Election Officer proposed these stricter rules based on her experience in supervising the 1996 Election and the circumstances that led to the need for a rerun. Quindel decl. ¶ 9. She concluded that "large amounts of campaign money can corrupt the election process." Election Officer Mem. at 9. All of the Hoffa Slate's proposals in this area, except one, are directly contrary to the purpose of the Election Officer's more stringent requirements. The assertion by the Hoffa Slate that the limitation on member contributions is vague is without merit. The limitation clearly forbids any IBT member from giving more than $1,000 in contributions, singularly or in the aggregate. Furthermore, while the limit may cause some administrative difficulties, it is necessary to prevent the type of misconduct detailed in the Election Officer's decision in *Cheatem*. Similarly, the

Hoffa Slate's proposals that candidates be permitted to contribute $25,000 to their own campaign, that the higher contribution limits for candidates apply to slate members who are not running for election in the Rerun Election but were part of a slate in the 1996 Election, and that retired members be considered members for contribution purposes are all unwise. As the Election Officer has pointed out, "the end result of this change would be to pour a substantial amount of additional money into an election process already infected by too much [money]." Election Officer Reply Mem. at 9–10. Therefore, increased restrictions on campaign contributions are reasonable in light of the circumstances that led the Election Officer to call for a rerun election, and are well within the Election Officer's discretion to promulgate rules for the supervision of the Rerun Election to ensure its fairness.[2]

The Election Officer also proposed enhanced disclosure requirements for campaign contributions and expenditures. These reporting requirements are both broader in scope and require more frequent reporting than the requirements in the 1991 and 1996 Election Rules. The Proposed Rerun Plan eliminates the $100 threshold for reporting contributions in the Campaign Contribution and Expenditure Reports ("CCERs"). The proposed rule requires the inclusion in the CCERs every financial contribution regardless of amount. This includes, but is not limited to, all cash donations, donations made at fundraising events, and paraphernalia sales. Proposed Rerun Plan, Article V, Section B. Furthermore, "[i]nformation as to each contribution shall include the name and Local Union number of the contributor, the amount of such contribution and the nature of the contribution." Id.

The Proposed Rerun Plan also requires the reporting of detailed information regarding every fundraising event held, including, without limitation, "campaign rallies, raffles, beer or cocktail parties, cash bars, and dinners at which cash was collected." Proposed Rerun Plan, Article V, Section B. The Hoffa Slate asks that the Proposed Rerun Plan be modified so that campaigns are not required to report individual donations of $50 or less. Hoffa br. at 11. It argues that the proposed rule creates an "unreasonable administrative burden" making such contributions "almost cost prohibitive." Id.

This Court is not persuaded by the Hoffa Slate's argument. There is nothing unreasonable about requiring contributors to a candidate to provide their name and local union number along with their contribution regardless of the amount. The Hoffa Slate has not presented any evidence that such a requirement would in fact be "cost prohibitive." In light of allegations that prohibited contributions were being funneled into the campaigns as non-itemized contributions or sales of paraphernalia, the more strict requirement is necessary. The Election Officer's decision to eliminate the $100 threshold amount and require reporting on all contributions is well within her discretion given the large amounts of non-itemized contributions by both sides. (Quindel decl. ¶ 13).

E. Timetable for the Rerun Election

The Hoffa Slate objects to the timetable for the Rerun Election as set forth by the Election Officer. It argues that the proposed schedule will cause low voter interest because it would have the ballots mailed a week before Christmas. Alternatively, the Hoffa Slate suggests that the balloting occur at the beginning of February, 1998. This they claim would allow sufficient time for all administrative matters, avoid the holidays, and provide an adequate opportunity for candidates to reach the membership. Although this Court agrees that the balloting should not occur just prior to the holidays, this Court sees no reason to push back the balloting to February, 1998. This Court finds that an extension until February, 1998, would only serve to unnecessarily increase the cam-

---

**2.** The one suggestion of the Hoffa Slate that does not run contrary to the purpose of the tighter campaign contribution rules is its proposal that the higher campaign contribution limits not apply to candidates who are nominated for election but withdraw prior to the deadline. Although this Court agrees that no artifice should be permitted allowing otherwise prohibited contributions to find their way into the campaigns, the Court agrees with the Election Officer that such issues would best be addressed on a case-by-case basis.

paign period. Therefore, the following schedule will govern:

| Day 0 | Sept. 29 | Election Plan Approved by the Court. |
| Day 25 | Oct. 24 | Declaration of candidacy of previously nominated candidates. |
| Day 39 | Nov. 7 | Supplemental nomination ballots sent to delegates. |
| Day 53 | Nov. 21 | Nominating ballots to be returned and tallied. |
| Day 64 | Dec. 2 | New slate declarations due and withdrawals. |
| Day 74 | Dec. 12 | Notice of Election posted at work sites and published in magazine; ballots printed; hiatus on Union publications begins. |
| Day 102 | Jan. 9 | Mailing of Rerun ballots to IBT members. |
| Day 130 | Feb. 6 | Return of ballots and begin Rerun count. |

The aforementioned schedule is realistic and affords the prospect of a solid turnout.

## IV. Additional Objections

In addition to its objections to the Election Officer's proposed modifications of the 1996 Election Rules, the Hoffa Slate proposes the following additions to the Proposed Rerun Plan: (1) ban independent committees from participating in the rerun, or alternatively subject them to all disclosure requirements and contribution limitations; (2) limit contributions to candidates' Legal and Accounting Funds to $50,000; (3) require candidates with outstanding debts to file periodical CCER's until those debts are retired; (4) order that a notice of the reason for the Rerun Election be mailed to each member and affiliate; and (5) modify the requirements concerning mailing and counting of ballots. Each of these proposals will be discussed in turn.

 First, the Hoffa Slate requests that this Court ban independent committees from participating in the Rerun Election because they "merely provide opportunities for mischief of the kind which necessitated the rerun." Hoffa br. at 12. It suggests that members interested in supporting candidates may do so by contributing directly to the candidates of their choice. *Id.* However, the Hoffa Slate once again fails to demonstrate any basis for its claim. No evidence has been pointed to suggesting that independent committees provide any more opportunities for "mischief" than the candidate or slate committees. In addition, contrary to the Hoffa Slate's interpretation, the Proposed

Rerun Plan and its limits do apply to independent committees. The only difference is that the CCERs filed by such committees may not be reviewed by candidates or other committees. However, the CCERs filed by independent committees will continue to be subject to careful scrutiny by the Election Office staff. Therefore, this Court finds no reason to prohibit the participation of independent committees in the Rerun Election.

Second, the Hoffa Slate suggests that a $50,000 limit be placed on contributions to candidates' Legal and Accounting Funds. Specifically, it points to the $300,000 contributed to the Carey Campaign by Cohen Weiss & Simon, the law firm representing the Carey Campaign, and argues that such a contribution should be limited to minimize outside interference with the election process. *Id.* at 13. While this Court recognizes such concerns, the Supreme Court has indicated that such a limitation on nonmember contributions to union campaign legal and accounting funds would "clearly violate" § 101(a)(4) of LMRDA. *United Steelworkers of America v. Sadlowski*, 457 U.S. 102, 119, 102 S.Ct. 2339, 2349, 72 L.Ed.2d 707 (1982). Accordingly, this Court cannot impose such a limitation.

Third, the Hoffa Slate suggests that candidates with outstanding debts be required to file additional CCERs every three months until the debt is retired. Hoffa br. at 16. It contends that this "is the only way to insure that debts are not converted into illegal contributions and that all the Rules from the original election as well as the Rules for the Rerun are enforced." *Id.* Such a proposal is unnecessary. The Election Office will continue to monitor the debt of all candidates on a regular basis. The Hoffa Slate has again failed to provide any valid evidence why additional rules are necessary.

Fourth, the Hoffa Slate has requested that notice of the reason for the Rerun Election "be mailed to each member and affiliate clearly stating that the election is being rerun because of misconduct by the Carey Campaign." Hoffa br. at 4. Such a mailing is expensive an unnecessary. The Election Officer has sent a copy of the four page summary of the *Cheatem* decision to all IBT

locals and other affiliates. The summary will also be printed in an upcoming issue of *The Teamster* which is mailed to every member. Moreover, the Election Officer's decision not to certify the 1996 Election has been the subject of extensive and prominent media and print coverage. This Court has little concern that the members of the IBT are not well aware of the reasons necessitating the Rerun Election.

Finally, the Hoffa Slate has proposed an extensive list of requirements concerning the mailing and counting of ballots it says should be included in the Proposed Rerun Plan. The Hoffa Slate claims that "each of [the matters dealt with in its list] raised problems during the original election and severely diminished confidence in the results announced by the Election Officer." Hoffa br. at 17. However, the alleged problems raised by the Hoffa Slate appeared in post-election protests filed with the Election Officer. All were investigated by the Election Office and denied in the Election Officer's decision in *Cheatem*. The *Cheatem* decision is currently on appeal before the Election Appeals Master and is awaiting his decision. No "end run" will be entertained. The proposals of the Hoffa Slate, based upon allegations pending before the Election Appeals Master, are inordinate and accordingly rejected.

V. Conclusion

For the reasons discussed above, it is hereby ordered that Election Officer Application X is granted and the proposed election rules for the Rerun Election are adopted as amended in this opinion.

It is further ordered that all subordinate entities of the International Brotherhood of Teamsters, including all locals and joint councils, are hereby bound by these election rules, effective immediately.

It is further ordered that these rules shall be enforceable upon pain of contempt.

SO ORDERED.

*MEMORANDUM & ORDER*

WHEREAS on September 29, 1997, this Court issued a decision approving most aspects of the Election Officer's Application X, for Approval of Proposed Rerun Election Plan ("Application X") *United States v. International Bhd. Of Teamsters,* 981 F.Supp. 222 (S.D.N.Y.1997); and

WHEREAS in the aforementioned decision, this Court set forth a timetable of events for the Rerun Election; and

WHEREAS Barbara Zack Quindel ("the Election Officer"), recused herself from deciding the issue of whether Ronald Carey ("Carey") should be disqualified from running in the Rerun Election; and

WHEREAS the Election Officer resigned her position as Election Officer and this Court, by Orders dated September 29, 1997, appointed Benetta M. Mansfield to the position of Interim Election officer, and appointed Election Appeals Master, Judge Kenneth Conboy, to investigate and decide the sole issue of whether Carey should be disqualified as a candidate in the IBT Rerun Election; and

WHEREAS upon request from Judge Kenneth Conboy the Interim Election Officer petitioned this Court for a modification of the timetable in order that he may have additional time to complete his investigation and issue a decision regarding the disqualification of Carey; and

WHEREAS the Interim Election Officer has so petitioned this Court in her Application XI, for an Extension of the Timetable for the Rerun Election Plan ("Application XI"); and

WHEREAS having reviewed the Interim Election Officer's motion for an order extending timetable events required under the Rerun Election Plan approved by this Court on September 29, 1997, this Court finds that such an extension is appropriate; and

WHEREAS accordingly, this Court finds that Application XI requesting an order extending the timetable of events for the IBT Rerun Election should be granted;

IT IS HEREBY ORDERED THAT Application XI of the Interim Election Officer is GRANTED; and

IT IS HEREBY FURTHER ORDERED THAT the following deadlines shall govern the IBT Rerun Election:

November 21, 1997: Declaration of candidacy of previously nominated candidates.

December 5, 1997: Supplemental nomination ballots sent to delegates.

December 19, 1997: Nominating ballots to be returned and tallied.

December 30, 1997: New Slate declarations due and withdrawals.

January 16, 1998: Notice of Election posted at work sites and published in magazine; ballots printed; hiatus on Union publications begins.

February 16, 1998: Mailing of Rerun ballots to IBT members.

March 17, 1998: Return of ballots and begin Rerun count.

SO ORDERED.

Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano (Theodore M. Lieverman, of counsel), Haddonfield, NJ, for Election Officer, Barbara Zack Quindel.

London & Mead (Christopher B. Mead, of counsel), Washington, DC, for Jere B. Nash III.

Mary Jo White, U.S. Atty., S.D. New York (Karen B. Konigsberg, Asst. U.S. Atty, of counsel), New York City, for Plaintiff U.S.

Zuckerman, Spaeder, Goldstein, Taylor & Kolker, L.L.P. (Edward J.M. Little, of counsel), New York City, for Defendant Intern. Broth. of Teamsters.

Goldman & Hafetz (Frederick P. Hafetz, of counsel), New York City, for Cohen, Weiss & Simon.

