UNITED STATES of America Plaintiffs,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendants.

In re: APPLICATION XX OF THE ELECTION OFFICER.

No. 88 Civ. 4486(DNE).

United States District Court, S.D. New York.

Sept. 14, 1998.

Martha Walfoort, James & Hoffman, P.C., Washington, DC, for defendant.

*OPINION & ORDER*

EDELSTEIN, District Judge.

*BACKGROUND*

This opinion emanates from the voluntary settlement of an action commenced by the United States of America against, *inter alia*, the International Brotherhood of Teamsters ("IBT" or "the union") and the IBT's General Executive Board ("GEB"). The settlement is embodied in the voluntary consent order entered March 14, 1989 ("Consent Decree"). The goals of the Consent Decree are to rid the IBT of the hideous influence of organized crime and establish a culture of democracy within the union. The long history of this case has been set forth in this Court's numerous prior opinions. Accordingly, only those facts necessary for resolving the instant application shall be set forth.

On September 29, 1997 this Court issued a decision approving most aspects of the Election Officer's Application X, For Approval of Proposed Rerun Election Plan and Establishing Rules For the 1996 International Brotherhood of Teamsters' Rerun Election. *See United States v. International Bhd. of Teamsters ("Rerun Plan Decision")*, 981 F.Supp. 222 (S.D.N.Y.1997). At that time, this Court set forth the rules that would govern and established a timetable for the rerun election. *Id.* On that same day, the former Election Officer, Barbara Zack Quindel (the "former election officer"), resigned her position as Election Officer, and this Court appointed Benetta M. Mansfield (the "Interim Election Officer") to the position of Interim Election Officer. *See United States v. International Bhd. of Teamsters*, 981 F.Supp. 222 (S.D.N.Y. 1997).

The Interim Election Officer, in Applications XI and XII, petitioned this Court for modification and suspension of the timetable

for the IBT Rerun Election. *See* Election Officer's Application XI, for an Extension of the Timetable for the Rerun Election Plan; Election Officer's Application XII, for Temporary Suspension of the Timetable for the Rerun Election. On October 20, 1997 and November 21, 1997, this Court issued Orders granting the interim Election Officer's Applications XI and XII, respectively. *See United States v. International Bhd. of Teamsters,* No. 88 Civ. 4486 (S.D.N.Y. Oct. 20, 1997); *United States v. International Bhd. of Teamsters,* 1997 WL 728494, No. 88 Civ. 4486 (S.D.N.Y. Nov. 21, 1997).

This Court then appointed Michael G. Cherkasky (the "Election Officer") as the Election Officer for the International Brotherhood of Teamsters by Order dated December 2, 1997. *See United States v. International Bhd. of Teamsters,* No. 88 Civ. 4486 (S.D.N.Y. Dec. 2, 1997). The Election Officer, in Applications XV and XVI, requested the continued suspension of the timetable for the Rerun Election in order that he may have additional time to complete his investigation of a protest the Carey Slate filed on May 16, 1997. *See* Election Officer's Application XV to Continue Suspension of the Timetable for the Rerun Election; Election Officer's Application XVI to Continue Suspension of the Timetable for the Rerun Election. This Court, by Orders issued on January 10, 1998 and February 10, 1998, granted Applications XV and XVI, respectively. *See United States v. International Bhd. of Teamsters,* No. 88 Civ. 4486 (S.D.N.Y. Jan. 10, 1998); *United States v. International Bhd. of Teamsters,* No. 88 Civ. 4486 (S.D.N.Y. Feb. 10, 1998).

On February 24, 1998, the Election Officer submitted to this Court Election Officer's Application XVII For Approval of the Timetable for the Rerun Election and Limited Changes to the Rerun Election Plan ("Application XVII"). Application XVII set forth a new proposed timetable for the conduct of the rerun election and proposed four amendments to the previously approved Rerun Plan. This Court granted in part Application XVI. *See United States v. IBT ("Rerun Rules II"),* 1998 WL 136431 (S.D.N.Y. Mar.24, 1998) at *6. This Court, however, refused to approve the timetable the Election Officer set forth in Application XVII until a final determination had been made in the Carey Slate Protest. *Id.* at *2.

On April 27, 1998, Election Officer Cherkasky concluded his investigation of the Carey Slate protest and issued a decision. *See In re Carey Slate,* PR–035–EOH (Post–47–EOH) (MGC) (Apr. 27, 1998). The Election Appeals Master affirmed that decision in all respects, *see In re Carey Slate,* 98 Elec.App. 348(KC) (May 15, 1998), and this Court affirmed it in part. *United States v. IBT ("Carey Slate Protest"),* 1998 WL 338251 (June 22, 1998 S.D.N.Y.) at *. Therefore, on May 5, 1998, Election Officer Cherkasky submitted to this Court Election Officer Application XVIII For Approval of the Timetable for the Rerun Election ("Application XVIII").

The timetable in Application XVIII proposed to commence the rerun election process on June 15, 1998 when supplemental nomination ballots were to be sent to delegates. *See* Application XVIII. According to the proposal, the ballots would be mailed to IBT members on September 14, 1998 and the deadline for the return of ballots would be October 14, 1998. *Id.* This Court found that "the proposed timetable [was] a realistic plan for the expeditious conduct of the rerun election and allow[ed] for efforts to maximize IBT rank-and-file participation in the rerun election...." *United States v. IBT ("E.O. Application XVIII"),* No. 88 Civ. 4486 (S.D.N.Y. June 3, 1998), at 4. Thus, this Court granted Application XVIII and established a new timetable for the conduct of the rerun election. *Id.*

The rerun election process officially commenced on June 15, 1998 with the mailing of supplemental nomination ballots. Furthermore, candidates filed slate declarations on July 13, 1998. Unfortunately, because of circumstances beyond the control of this Court, funding for the rerun election was in doubt. A divided panel of the Court of Appeals for the Second Circuit reversed this Court's decision ordering the IBT to pay for the cost of the rerun election. *See United States v. IBT ("Rerun Funding"),* 141 F.3d 405, 1998 WL 145621 (2d Cir. Mar.30, 1998). Moreover, the United States Congress as

well as the IBT's General Executive Board continued to refuse to provide any funding for Election Officer supervision despite the unanimous consensus of the parties that Election Officer supervision of the rerun election was preferred over an unsupervised election.

In light of these circumstances, on June 25, 1998, the Election Officer submitted to this Court Application XIX For an Order Securing Funding For a Supervised Rerun Election or Requiring the IBT to Conduct an Unsupervised Rerun Election ("Application XIX"). Application XIX requested an order from this Court directing the parties to agree to a plan that secured funding for the Election Officer's rerun election budget and to present it to this Court. Application XIX at 14. The Election Officer noted that approximately $8.6 million was needed in order to fully fund the supervision of the rerun election. The Election Officer notified this Court that "[a]bsent a prompt resolution to the funding crisis ... the Election Officer will submit a plan to the Court for the orderly and systematic wind-up of Election Officer operations." *Id.* at 15.

After months of negotiations the Government informed this Court that it secured the use of approximately $4.017 million to reimburse the IBT for past expenditures for the Independent Review Board on the conditions that (a) the IBT commit to spending "an amount equal [to that sum] ... to fund Election Officer supervision of the rerun;" and (b) the IBT commits "not only to pay $4.017 million to fund Election Officer Supervision but also supplement that with such additional funds as are needed to pay for conducting the supervised election." *See* Letters from Stephen R. Colgate to Hon. Ted Stevens and Hon. Harold Rogers (July 30, 1998) attached to letter from Karen B. Konigsberg to Hon. David N. Edelstein (August 4, 1998). Furthermore, after long, tedious and protracted hearings, the General Executive Board ("GEB") of the IBT begrudgingly agreed to pay $2 million to the Election Officer, as well as the $4.017 million, immediately upon receipt of $4.017 million from the Government. *See* Letter from Karen B. Konigsberg to Hon. David N. Edelstein (September 11, 1998). However, it should be noted that the General Executive Board of the IBT finally approved the $2 million contribution only after this Court demonstrated to the GEB that $2 million is an amount far less than the IBT would have had to expend on an unsupervised election.

Unfortunately, the approximately $6 million now available to the Election Officer remains short of the $8.6 million the Election Officer previously stated was needed to conduct a supervised rerun election. Nevertheless, with the imminent prospect of some funding available for a supervised election, the Election Officer submitted to this Court Election Officer's Application XX For Approval of an Amended Timetable for the Rerun Election ("Application XX") on September 9, 1998.

### *Application XX*

Under the Consent Decree, "the Election Officer is vested with broad authority to supervise each and every facet of the 1996 IBT election." *United States v. IBT*, 943 F.Supp. 360, 364 (S.D.N.Y.1996). Application XX presents modifications to the supervision process to permit supervision within the available funds and seeks approval of a revised timetable for the rerun election.

### 1. The Revised Budget

■ In Application XX, the Election Officer states that his revised draft budget reflects hard choices made because the available funding is below the Election Officer's previous budget for supervision. *See* Declaration of Election Officer Michael G. Cherkasky in Support of Application XX, dated September 8, 1998 ("Cherkasky Dec.") at ¶ 15. Among other things, the Election Officer notes that in order to complete the rerun election with the funds available, he will have to reduce the costs of protest investigations and will not be able to engage field staff *routinely* to conduct in-person investigations. *Id.* at ¶ 18. The Election Officer indicated that he will enforce Article XIV, Section 1 of the Election Rules, which requires any protestor to present evidence that a violation has occurred, in order to dispose summarily certain protests. *Id.* Furthermore, the Election

Officer states that he plans to reduce the amount of funds allocated for securing the ballots in connection with the ballot count by using electronic monitoring to secure the ballots, rather than twenty-four hour security guards. *Id.* at ¶ 19.

The Election Officer asserts that although there will necessarily be changes in the way the Election Officer performs certain functions, he believes "that a process implemented under this budget will be fair, will have integrity, and that the results will be honest." *Id.* at ¶ 15. He further notes his belief that "the budget reflects a plan for supervising the Rerun Election in accordance with the Consent Decree's objective of promoting democracy in the IBT." *Id.* Election Officer Cherkasky assures this Court, the parties, and the IBT membership that he "will investigate serious protests and allegations as completely as necessary to protect the integrity of the Rerun Election," and he "will not hold back on using resources needed to perform a serious investigation . . . ." *Id.* at ¶ 21. Moreover, the Election Officer stated that "to the extent that further funding becomes available, it will be used to provide further funding for the protest process." Election Officer's Reply Memorandum of Law in Support of Application XX ("E.O. Reply Mem."), at 1–2.[1]

Considering the serious misconduct that occurred in the 1996 IBT election, this Court considers it absolutely essential that the Election Officer supervise the rerun election process. While it is unfortunate that the parties have been unable to secure funding in the amount that the Election Officer previously determined was necessary for the conduct of the rerun election, this Court is optimistic that the Election Officer's revised budget will allow the Election Officer to adequately protect the integrity of the rerun election and assure IBT members, the parties, and this Court that the results of the rerun election will be honest. Therefore, this Court approves the Election Officer's revised budget for the conduct of the rerun election.

## 2. The Timetable

■ Because of the funding crisis that has engulfed the rerun election process, the Election Officer was unable to contract with vendors to secure necessary election services. Thus, a delay of the rerun election as originally scheduled is necessary. After consulting with the vendors and taking into account the events required for the successful completion of the rerun election, the Election Officer proposed the following amended timetable for the rerun election:

| | | |
|---|---|---|
| Day 0 | October 5, 1998 | Notice of Election Posted at work sites and local unions. |
| Day 28 | November 2, 1998 | Mailing of Rerun Election .Ballots to IBT members; hiatus on union publications begins |
| Day 59 | December 3, 1998 | Deadline for return of ballots; begin Rerun Election count; hiatus on union publications ends |

*Id.* at ¶ 11.

The amended timetable the Election Officer proposed provides a realistic plan for the expeditious conduct of the rerun election. This Court is hopeful that it will allow for efforts to maximize IBT rank-and-file participation in the rerun election. Therefore, this

---

1. The Government has informed this Court that "it appears that IBT Locals and Joint Councils will be making available to the Election Officer a minimum of $200,000 to $250,000 in contingency funding. *See* Letter from Karen B. Konigsberg to Hon. David N. Edelstein (September 10, 1998). By letter dated September 9, 1998, Harold J. Yates, President of Minnesota Teamsters Joint Council, advised the Government that some Joint Councils and Locals would authorize use of such monies as a contingency fund. *See id.* This Court has no objection to such assistance, assuming compliance with the terms of relevant bylaws and constitutions.

Nonetheless, in order to ensure that there is no appearance of impropriety, this Court must require that if such funds are to be made available to the Election Officer, they must be placed in the escrow account this Court established for the Election Officer by October 15, 1998, unless this Court approves a later date upon notification that a later date is needed for a given Local or Joint Council. Moreover, it must be made clear that the use of these funds is subject solely to the Election Officer's discretion. This Court recognizes that these funds are intended as contingency funds in the event the cost of supervising the rerun election exceeds the amount budgeted by and available to the Election Officer.

Court approves the proposed amended timetable with one modification.

In papers to this Court, both the Teamsters for a Democratic Union ("TDU") and the Hoffa Slate indicated their objections to the date on which the Election Officer proposed for the commencement of the hiatus on union publications. *See* Memorandum of Teamsters for a Democratic Union in Response to Application XX, ("TDU Br.") at 3–7; Statement of James P. Hoffa and the Hoffa Slate Re: Election Officer Application XX for Approval of an Amended Timetable for the Rerun Election ("Hoffa Br.") at 1–2. The TDU and the Hoffa Slate urge this Court to lengthen the hiatus on union publications the Election Officer proposed to protect against improper use of unions resources. *Id.* Both the TDU and Hoffa papers point out that the improper use of a union-financed publication in the crucial weeks of campaigning immediately prior to the balloting might prove difficult to remedy. *Id.* Furthermore, the Election Officer stated to this Court that he "has no objection to enlarging the hiatus period." E.O. Reply Mem. at 1–2.

This Court finds that allowing unrestricted union publication up to the day the ballots are mailed creates an unacceptable risk of a last minute violation that would be difficult to remedy. Three additional weeks would provide the Election Officer with adequate time to remedy any improper use of union-financed publications. Therefore, this Court finds that the hiatus on union publications should commence on October 12, 1998.

### Conclusion

For the reasons discussed above, it is hereby ordered that Application XX is Granted and the timetable for the rerun election is adopted as modified in this opinion.